```
            IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                 *
MICHAEL JANOSKA and
HOLLY JANOSKA,
                                 *
     Plaintiffs,
                                 *
          v.                          CIVIL NO.: WDQ-07-1232
                                 *
D.C. DEVELOPMENT, LLC,
et al.,
                                 *
     Defendants.
                                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Michael and Holly Janoska sued D.C. Development, LLC ("DCD"), Deep Creek Marina, LLC ("Deep Creek"), and Adrian Spiker, II for negligence and loss of consortium. DCD cross-claimed against Spiker for implied indemnity. On July 6, 2009, the Fourth Circuit reversed this Court's grant of summary judgment for the defendants and remanded the case. Pending are the defendants' dispositive motions. For the following reasons, DCD's and Spiker's motions will be denied, and Deep Creek will be granted summary judgment.

I.   Background

Michael Janoska worked as a snowmaker for Recreational Industries, Inc. ("RII") at Wisp Ski Resort ("Wisp") in McHenry,

1

Maryland.[1]  As a snow-maker, Janoska assembled and maintained artificial snowmaking machines and performed other maintenance at Wisp.  Michael Janoska Dep. 25:10-18, 27:21-28:1, Sept. 30, 2007.  On February 18, 2006, at about 1:00 a.m., Janoska was monitoring the snowmaking machines[2] at the bottom of the Happy Camper trail at Wisp when he saw lights circling the top of the trail.  *Id*. 76:2-4.  The lights were the tail lights of a truck that had been "doing doughnuts" on the trail.  *Id*. 79:3-5.

Although Janoska previously had radioed security when he discovered trespassers, he approached the truck on his snowmobile because he believed the situation required his "immediate attention," and was "concerned . . . that [the driver] was going to cause damage to himself or the snowmaking equipment."[3]  *Id*. 173:3-12.  Janoska was also concerned that "[the driver] was . . . damaging the [trail]."  *Id*. 173:3-12; 93:20-23.  Janoska was responsible for making sure the trail was ready for the morning.

---

[1] DCD owns the land on which Wisp is situated, but RII operates the resort for DCD under an oral agreement. DCD's Answer to Deep Creek and Spiker's Interrogs. No. 18; Karen Myers Aff. ¶ 3, Dec. 12, 2007.

[2] Happy Camper trail had more than 20 snowmaking machines. *Id*. 74:22-25.  Janoska reached each machine on a snowmobile. *Id*. 70:23-25.

[3] When Janoska approached, the truck was about 10 feet from snowmaking equipment.  *Id*. 86:8-15.  Because the snowmaking machines are powered by high voltage electric current from wires along the trails, he feared the truck's proximity to the machines posed a risk of injury or death to the driver.  Michael Janoska Aff. ¶ 8, Dec. 28, 2007.

2

*Id.* 173:11-14.

Janoska intended to ask the driver of the stopped truck to leave the trail, *id.* 95:8-12, but as he reached the truck, it accelerated and sprayed snow on him, *id.* 95:16-21. Blinded by the snow, *id.* 96:1, and fearing for his safety, Janoska tried to get to the opposite side of the trail, *id.* 96:16-20, but the truck had begun "doing doughnuts" and "making figure eights," *id.* 97:4-21. Janoska collided with the truck's passenger-side front door and was injured. *Id.* He managed to stand up and open the driver's door; he recognized the driver as Spiker, the managing member of Deep Creek. *Id.* 102:13-20. The truck was owned by Deep Creek. Adrian Spiker, II Dep. 22:9-11, Dec. 14, 2007.

Spiker had been drinking at a local tavern with friends, and decided to drive onto the ski slopes. *Id.* 27:12-28:21. He called Ron Beeghly, Chief of Wisp's Security Department, so that the snowmakers "would not be alarmed" by the truck on the slopes. *Id.* 28:6-29:2; Ron Beeghly Dep. 29:9-14, Dec. 5, 2007. Beeghly attempted to stop Spiker, but the accident occurred before Beeghly could get him off the trail.[4] *Id.* 42:11-17.

On May 10, 2007, the Janoskas sued the Defendants for negligence and loss of consortium. Paper No. 1. On October 11,

---

[4] Beeghly testified that Spiker had driven onto the slopes without authorization at least four times before February 18, 2006. *Id.* 31:12-22.

2007, DCD cross-claimed against Spiker for implied indemnity. Paper No. 35.  On March 5, 2008, the Court granted summary judgment to the defendants on the ground that Janoska had assumed the risk of his injuries.  Paper No. 54.  The Court denied the Janoskas' motion for reconsideration, Paper No. 62, and they appealed, Paper No. 58.

The Fourth Circuit held that Janoska's testimony that he had approached the truck because he was concerned about the safety of himself, Spiker and others on the trail created a genuine issue of material fact about whether Janoska's acceptance of the risk was voluntary.[5]  Paper No. 66.  On October 14, 2009 and November 16, 2009, the DCD, Deep Creek, and Spiker renewed their motions for summary judgment.  Paper Nos. 71, 76.  Spiker also moved to dismiss DCD's cross-claim.  Paper No. 76.

---

[5] The Fourth Circuit relied on *ADM P'ship v. Martin*, 348 Md. 84, 702 A.2d 730, 735 (1997).  Under *Martin*, "if the defendant's tortious conduct has left [the plaintiff] no reasonable alternative course of conduct in order to . . . avert harm to himself or another, the acceptance of the risk is not voluntary." *Id*. at 735 (*quoting* Restatement (Second) of Torts § 496E) (internal quotation marks omitted).  "[I]f the driver of the pickup truck were to damage the snowmaking machines, it could result in a significant risk of injury to the occupants of the truck and also to any other persons on the ski slope, including Janoska and all other snowmakers." *Janoska v. D.C. Development, LLC*, 331 Fed. Appx. 210, 211 (4th Cir. 2009).  Janoska's testimony created a jury question whether Spiker's conduct had left Janoska with no reasonable alternative to avert harm to himself and others.  *Id*.

II.  Analysis

    A.  Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

    The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B.   DCD's Motion

DCD seeks summary judgment because (1) it is immune from liability as Janoska's "statutory employer"; (2) it did not breach its duty to Janoska; and (3) Janoska was contributorily negligent.

1.   Statutory Immunity

Generally, the Maryland Workers' Compensation Act, Md. Code. Ann., Lab. & Empl. § 9-101 *et seq.*, provides the exclusive remedy for an injured employee against his employer, *see id*. § 9-509. "Whether an employer-employee relationship exists in the context of workers' compensation depends typically on the common law rules of the 'master' and 'servant' relationship." *Rodrigues-Novo vs. Recchi America, Inc.*, 381 Md. 49, 846 A.2d 1048, 1052 (2004). "When certain conditions are met, however, the Act broadens the definition of employer to cover principal contractors that ordinarily would not be considered the worker's employer under the common law [.]" *Id*.

Under § 9-508(a), a defendant is subject to liability under the Act--and is immune from tort liability--if it is (1) a principal contractor (2) that has contracted to perform work (3) that is a part of its trade, business or occupation, and (4) has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work. *Id*. at 1053.   If these requirements are met, the

6

principal contractor is the employee's "statutory employer." *Id*.[6]

DCD has not presented evidence of an antecedent contract with Wisp homeowners or skiers.  Although it relies on its "many implied promises" to third parties that it will maintain Wisp's ski slopes, it has not provided evidence that it "agree[d] for *stated consideration* to perform [this maintenance] *according to plans, specifications, or directions of [those] third part[ies]*." *Id*.  (emphasis added).[7]  Further, DCD has not shown that the alleged contracts were for work "that is a part of its trade,

---

[6] Section 9-508(a) requires evidence of two contracts: (1) a "principal" or "antecedent" contract between the principal contractor and a third party and (2) a "subcontract" between the principal and a subcontractor who contracts "to do the whole or the part" of the work the principal has promised to complete under the antecedent contract.  *Id*. at 1054.  The antecedent contract must be "one in which a contractor agrees for stated consideration to perform some work or service according to plans, specifications, or directions of a third party."  *Id*. at 1059-60 (*quoting Lathroum v. Potomac Elec. Power Co.*, 309 Md. 445, 524 A.2d 1228, 1230 (1987)).

DCD argues that it has an implied antecedent contract with the skiers and homeowners at Wisp, under which it maintains the slopes in a manner suitable for skiing and snowboarding; DCD subcontracts this work to RII, which operates Wisp under an oral agreement with DCD.

[7] DCD cites the affidavit of Karen Myers, a member of DCD, as evidence of these implied contracts, but Myers's affidavit only states that DCD (1) owns portions of the land where Wisp is located and (2) has an oral contract with RII under which the latter operates and manages Wisp. *See* Myers Aff. ¶¶ 2-3.  Myers's affidavit says nothing about a contractual or other relationship between DCD and Wisp's skiers or homeowners.

7

business or occupation." *Id*. at 1053.[8]  According to its managing member, Karen Myers, DCD is a "real estate development entity," Karen Myers Dep. 20:12, Dec. 14, 2007, which contracts with RII to operate Wisp "because it enhances the value of the real estate that [DCD] is developing around the ski resort," *id*. 18:22-19:3.

As DCD has not produced evidence that maintaining ski areas was part of its business, it has not shown that it is entitled to "statutory employer" immunity under § 9-508(a).

    2.   Breach of Duty to Janoska

The Janoskas' theory of DCD's liability is based on its ownership of the land where the accident occurred; thus, DCD's duty to Janoska depends on whether he was an invitee, licensee by invitation, bare licensee, or trespasser. *See Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 705 A.2d 1144, 1148 (1998).[9]

---

[8] *See also Warren v. Dorsey Enters., Inc*., 234 Md. 574, 200 A.2d 76, 78 (1964). In *Warren*, a worker who was injured while starting a stock car race at a raceway owned by Dorsey Enterprises. *Id*.  The worker's employer had contracted with Dorsey to conduct races at the track. *Id*. The Maryland Court of Appeals held that Dorsey was not a principal contractor because Dorsey did not contract to produce or stage stock car races. *Id*. Dorsey was not in the business of staging stock car races and had no contractual obligation to conduct the races; thus, there was no principal contract and Dorsey was not a statutory employer. *Id*. DCD has not produced evidence that it was in the business of operating or maintaining ski slopes or that it had a contractual obligation to provide such maintenance.

[9] "An invitee is a person on the property for a purpose related to the possessor's business." *Flippo*, 705 A.2d at 1148. "The

8

DCD concedes that Janoska was DCD's invitee while he was engaged in snowmaking.[10]  However, DCD argues that when Janoska was injured, he was acting not as a snowmaker but as a security officer, and was thus exceeding the scope of his invitation.  DCD contends that when the accident happened, Janoska was a bare licensee to whom it owed "no duty except to refrain from willfully or wantonly injuring the licensee and from creating new and undisclosed sources of danger without warning."  *Id*.  Because the Janoskas have not presented evidence that DCD willfully injured Janoska or created a new, undisclosed source of danger, DCD argues that it is entitled to summary judgment on their negligence claim.

DCD contends that because it was the role of security officers to confront and remove trespassers like Spiker, Janoska's encounter with Spiker was outside the scope of his

---

possessor owes an invitee a duty of ordinary care to keep the possessor's property safe." *Id*. "A licensee by invitation is a social guest to whom the possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable." *Id*. "A bare licensee is a person on the property with permission, but for his or her own purposes; the possessor owes no duty except to refrain from willfully or wantonly injuring the licensee and from creating new and undisclosed sources of danger without warning the licensee." *Id*. "[A] trespasser is one who intentionally and without consent or privilege enters another's property." *Id*. To a trespasser, "no duty is owed except that the possessor may not willfully or wantonly injure or entrap the trespasser."  *Id*.

[10] As Myers testified, DCD contracts with RII to operate the ski resort so that property values will rise. Karen Myers Dep. 18:22- 19:3.  Janoska, as an RII employee, contributed to that effort by

invitation. DCD relies on Beeghly's testimony that it was standard procedure for snowmakers to radio security when they found a trespasser; dealing with trespassers was a "security function." *See* Beeghly Dep. 148:4-19, 165:3-8.

It is undisputed that Janoska's invitation did not contemplate his performance of security functions. However, it is unclear that Janoska was performing a security function when he confronted Spiker. Janoska testified that he confronted Spiker because he was "concerned . . . that [Spiker] was going to cause damage to himself or the snowmaking equipment." *Id*. 173:3-12. Even if, as DCD argues, Janoska's invitation was limited to maintaining the snowmaking equipment, a reasonable jury could find that confronting Spiker was an effort to protect that equipment and was within the scope of Janoska's invitation. Further, Janoska testified that he confronted Spiker because he was concerned that "[Spiker] was . . . damaging the ski hill." *Id*. 173:3-12; 93:20-23. Because Janoska also testified that it was his "responsibility to make sure [the trail] was ready for the morning," *id*. 173:11-14, a reasonable jury could find that confronting Spiker was within the scope of Janoska's invitation to prepare the trail.

Janoska has cited evidence that would permit a reasonable jury to find that DCD owed him a duty as an invitee. There is

---

making snow and performing other tasks at the resort.

10

also evidence that DCD breached this duty: (1) DCD was aware that Spiker had trespassed on the slopes at least four times before February 18, 2006, Beeghly Dep. 31:17-19, 33:14-17; (2) on one of those occasions, Spiker had driven his truck into a snow bank in front of a snowmaking machine, and required another vehicle to extricate it, *id*. 34:9-19; (3) trespassing after hours is prohibited, *inter alia*, for the safety of the snowmakers, who work around high voltage equipment, *id*. 61:13-22; (4) Beeghly had suggested several times that a gate or fence be built to prevent trespassers, *id*. 121:4-122:2; (5) no gate was built, *id*. 12:12-15; and (6) Spiker entered the area Beeghly had recommended be gated, *id*. 121:4-8.  These facts would permit a jury to find that DCD breached its duty by failing to keep trespassers off the slopes.

### 3. Contributory Negligence

DCD argues that the Janoskas cannot recover because Janoska was contributorily negligent.[11]  "Contributory negligence of a plaintiff will ordinarily bar his . . . recovery." *Bd. of County Comm'rs v. Bell Atl.-Md.*, 346 Md. 160, 695 A.2d 171, 180 (1997). "Contributory negligence is that degree of reasonable or ordinary care that a plaintiff fails to undertake in the face of an appreciable risk which cooperates with the defendant's negligence

---

[11] Deep Creek and Spiker have adopted DCD's contributory negligence argument.  Deep Creek and Spiker's Opp. 5.

11

in bringing about the plaintiff's harm." *Id*.  Contributory negligence is an affirmative defense that a defendant must prove by a preponderance of the evidence.  *Id*.

DCD contends that Janoska's decision to confront Spiker rather than call security was a failure of ordinary care in the face of an appreciable risk.  Because, as Janoska testified, Spiker was driving "erratic[ally]," Janoska Dep. 89:16, Janoska's decision to confront him was negligent.  This argument is similar to DCD's argument that Janoska assumed the risk of injury.

As noted above, the Fourth Circuit has held that Janoska's reasons for approaching Spiker created a jury question whether Spiker's conduct left Janoska with "no reasonable alternative course of conduct in order to . . . avert harm to himself or another."  *Janoska v. D.C. Development, LLC*, 331 Fed. Appx. 210, 211 (4th Cir. 2009) (*citing ADM P'ship v. Martin*, 348 Md. 84, 702 A.2d 730, 735 (1997)).  Relying on Janoska's statements that he approached Spiker's truck because he "was very concerned . . . that [Spiker] was going to cause damage to himself or the snowmaking equipment" and that high voltage wires ran to the snowmaking machines, *id*., the Fourth Circuit held that a reasonable jury could find that Janoska had no "reasonable alternative course of conduct," and thus that his acceptance of the risk of approaching Spiker was not voluntary, *id*.

The Fourth Circuit's reasoning also applies to contributory

12

negligence.[12]  Given that Janoska's testimony creates a jury question whether Janoska assumed the risk of injury by approaching Spiker, there is also a jury question whether he was contributorily negligent.

DCD also argues that Janoska was contributorily negligent when, after being blinded by snow that had been sprayed by Spiker's sudden acceleration, he drove his snowmobile as fast as it would go for 20 to 30 seconds before colliding with the truck. Janoska stated that he "hit the throttle of the snowmobile . . . to get away from [Spiker]" by moving to the opposite side of the trail.  Janoska Dep. 96:4-24.  This testimony raises the issue whether Spiker's conduct left Janoska with no reasonable alternative course of conduct to avoid harm. Given that Spiker began "doing doughnuts" and "making figure eights" after Janoska reached the truck, a reasonable jury could find that Spiker left Janoska no reasonable alternative but to drive blindly to the other side of the trail.

---

[12] Although "there is a difference between an assumed risk and contributory negligence . . . the distinction between the two is often difficult to draw and . . . is often without importance." *Scott v. John H. Hampshire, Inc.*, 246 Md. 171, 227 A.2d 751, 753 (1967).  "[W]hether the defense [is] contributory negligence or assumption of risk, neither defense is applicable in . . . case[s] whe[n] the conduct of the defendant appears to have created such a situation as to justify if not compel the plaintiff to undergo the risk of being injured in order to warn others and avert their harm."  *Id*. This rule also applies when the defendant's conduct leaves the plaintiff no reasonable alternative to avoid harm to himself. *See Martin*, 702 A.2d at 735.

13

DCD has not established that its immunity from suit as a "statutory employer" or the absence of a genuine issue of material fact. Accordingly, its motion for summary judgment will be denied.

C.   Deep Creek and Spiker's Motions

Deep Creek and Spiker have argued that they are entitled to summary judgment on the Janoskas' negligence and loss of consortium claims; Spiker also argues that DCD's cross-claim against him should be dismissed as moot.[13]

1.   Negligent Entrustment

Deep Creek seeks summary judgment on the ground that it did not negligently entrust the truck to Spiker.[14]  Under the

---

[13] As noted above, Deep Creek and Spiker adopted DCD's argument that Janoska was contributorily negligent and thus barred from recovery for his injuries. Because there is a question of fact whether Janoska was contributorily negligent, Deep Creek and Spiker are not entitled to summary judgment on this basis. Deep Creek has also argued that it is entitled to summary judgment because there is no genuine dispute of material fact whether Deep Creek negligently entrusted the truck to Spiker. Spiker has not adopted this argument; he has moved for summary judgment only on the basis of contributory negligence. Accordingly, the motion for summary judgment must be denied as to Spiker.

[14] The Janoskas' Complaint does not contain a "negligent entrustment" count; Deep Creek is named with the other defendants in the "Negligence" count.  In that count, the Janoskas allege that "at all times . . . Spiker had permission to drive the [truck] owned by Deep Creek" and that "Deep Creek . . . was negligent for allowing . . . Spiker to drive the[] truck." Compl. ¶¶ 14-15. It appears, as Deep Creek contends, that the Janoskas' theory of Deep Creek's liability is negligent entrustment.  There are no facts in the complaint that would support another theory of negligence against Deep Creek (*e.g.*, vicarious liability based on the acts of Spiker, its agent). Nor

14

doctrine of negligent entrustment:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows, or . . . should know, to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect . . . to be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.

*Neale v. Wright*, 322 Md. 8, 585 A.2d 196, 198-99 (1991) (*quoting* Restatement (Second) of Torts § 390). Although it is undisputed that Deep Creek owned the truck and permitted Spiker to drive it, Spiker Dep. 22:9-20, the Janoskas have not cited evidence that Deep Creek knew or should have known that Spiker was likely to use the truck to cause an unreasonable risk of harm to himself or others. Their argument appears to be that Spiker, as managing member of Deep Creek, knew that he was likely to use the truck in an unsafe manner[15] and thus negligently entrusted the truck to himself. This theory requires Spiker to have been acting as Deep Creek's agent when he decided to drive onto the slopes. However, the Janoskas have not cited evidence that Spiker was acting within the scope of his duties as managing member of Deep Creek; rather, the evidence is that Spiker went out to dinner and to a local tavern with friends. There is no evidence that he was acting as Deep Creek's agent when he decided to take the truck

---

have the Janoskas advanced any other theory in their opposition.

[15] By taking the truck onto the ski slope after drinking alcohol.

onto the slopes.  Accordingly, Deep Creek's motion for summary judgment on the Janoskas' negligent entrustment claim will be granted.[16]

        2.   DCD's Cross-Claim Against Spiker

On July 5, 2007, DCD cross-claimed for implied indemnity against Spiker.  Spiker argues that because Janoska was contributorily negligent, the cross-claim should be dismissed as moot.  As noted above, there is a genuine issue of material fact whether Janoska was contributorily negligent.  Accordingly, Spiker's motion to dismiss will be denied.

III. Conclusion

For the reasons stated above, DCD's and Spiker's motions for summary judgment, and Spiker's motion to dismiss DCD's cross-claim, will be denied.  Deep Creek's motion for summary judgment will be granted.

January 29 2010                                                    /s/
Date                                                        William D. Quarles, Jr.
                                                            United States District Judge

---

[16] Because the Janoskas' claim against Deep Creek for loss of consortium is based on their negligent entrustment claim, summary judgment must also be granted for Deep Creek on the loss of consortium claim in Count Two.